UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRIS APPLEWHITE 99-A-6852,

                              Plaintiff          DECISION AND ORDER

            -v-                                  04-CV-6602-CJS-MWP

MICHAEL McGINNIS, Superintendent, JOHN D.
MORTON, Correction Sergeant, RANDY BANKS,
Correction Officer, and DOUGLAS D. WESTERVELT,
Correction Officer,
                              Defendants

_____


APPEARANCES

For Plaintiff:          Chris Applewhite, *Pro se*
                        99-A-6852
                        Southport Correctional Facility
                        PO Box 2000, 236 Institution Road
                        Pine City, New York 14871


For Defendants:         Gary M. Levine, Esq.
                        Office of the New York State Attorney General
                        144 Exchange Boulevard, Suite 200
                        Rochester, New York 14614


INTRODUCTION

    This is an action brought pursuant to 42 U.S.C. § 1983 in which the plaintiff, a

prison inmate at Southport Correctional Facility ("Southport"), alleges that Michael

McGinnis ("McGinnis"), the former Superintendent of Southport, John Morton ("Morton"),

a Corrections Sergeant at Southport, Randy Banks ("Banks") a Corrections Officer at

Southport, and Douglas Westervelt ("Westervelt"), also a Corrections Officer at

1

Southport, violated his constitutional rights.  Specifically, he alleges that on December 4, 2001, Morton, Banks, and Westervelt physically assaulted him, and that McGinnis failed to prevent the attack.  Now before the Court is Defendants' motion for summary judgment [#24].  For the reasons that follow, the application is denied.

BACKGROUND

Unless otherwise noted, the following are the facts of the case, viewed in the light most-favorable to Plaintiff.  On March 7, 2001, Plaintiff was transferred to Southport to serve a disciplinary sentence in the Segregated Housing Unit ("SHU").[1]  On July 5, 2001, Banks "assaulted" Plaintiff by physically removing him from the "draft room" area of Southport, where Plaintiff's legal materials were stored.  Specifically, Plaintiff states that while he was arguing with corrections officers, who he contends were improperly attempting to prevent him from retrieving his legal papers, Banks "tackled" him. (Plaintiff's Affidavit in Opposition to Summary Judgment [#55] ¶ ¶ 14-15).  Subsequently, Plaintiff wrote a ten-page letter to McGinnis, complaining that corrections staff were denying him his "constitutional rights to access to the court." (Plaintiff's July 5, 2001 letter to McGinnis, attached to Complaint [#1] at 1).   Plaintiff also stated that he "was physically assaulted by an officer named Banks." (*Id.* at 3).  Plaintiff further stated his belief that he was being targeted for harassment and retaliation as a result of a conspiracy among corrections staff at Southport.  Plaintiff requested, *inter alia*, that McGinnis investigate the officers named in the letter, including Banks. (*Id.* at 9).  McGinnis did not respond to the letter. (Plaintiff's Dep. at 67).  Following the incident,

---

[1]In SHU, inmates remain in solitary confinement 23 hours per day, and have one hour of recreation in an enclosed exercise pen.

Plaintiff was issued a misbehavior report, and was eventually found guilty at a disciplinary hearing. Plaintiff appealed, however, McGinnis affirmed the conviction.

Plaintiff also filed an inmate grievance concerning the incident, which apparently was referred directly to McGinnis, pursuant to 7 New York Code Rules & Regulations ("NYCRR") § 701.8, since it involved allegations of staff harassment. (Plaintiff's Affidavit in Opposition to Summary Judgment [#55] ¶ 21). Plaintiff maintains that McGinnis denied the grievance, though there is no copy of the grievance or of McGinnis's decision in the record. (*Id*.; see also, Plaintiff's Dep. at 67-68).[2] Between July and November 2001, Plaintiff filed additional inmate grievances alleging retaliation by prison staff, all of which McGinnis denied. (Plaintiff's Affidavit in Opposition to Summary Judgment [#55] ¶ 24).

On November 23, 2001, Banks allegedly caused filthy water, which had flooded the cell block, to splash into Plaintiff's face. Plaintiff responded by throwing jell-o from his food tray on Banks. Banks issued Plaintiff a misbehavior report, and as a result, Plaintiff received a pre-hearing Deprivation Order, denying him exercise, showers, cell clean-up, and haircuts. Plaintiff was subsequently found guilty at a disciplinary hearing, and McGinnis affirmed the conviction. (Plaintiff's Affidavit in Opposition to Summary Judgment [#55] ¶ ¶ 39-40). It is unclear from the record whether Plaintiff field an inmate grievance over this incident.

On December 4, 2001, Plaintiff claims that Banks, Westervelt, and Morton each assaulted him. In that regard, Plaintiff was scheduled to be escorted from his cell to

---

[2]Plaintiff indicates that many of his legal documents have been lost or destroyed. See, Plaintiff's Affidavit in Opposition to Summary Judgment [#55] at ¶ 21.

take a shower, and Banks and Westervelt were his escort officers.  Banks and

Westervelt came to Plaintiff's cell, and pursuant to facility procedures, had Plaintiff place

his hands behind his back and through the food tray slot in the cell door, so that they

could apply handcuffs.  Once Plaintiff was handcuffed in this manner, Banks and

Westervelt opened the cell door, and Westervelt applied a leg shackle to Plaintiff's left

ankle.  At this point, Plaintiff alleges, Banks yanked upward on Plaintiff's handcuffs, and

Westervelt yanked upward on his leg restraint, and both officers then body-slammed him

to the cell floor. (*Id*. at 38-42).  The officers then allegedly punched and kicked Plaintiff

60 to 70 times over a period of ten minutes. (*Id*. at 46-60).  According to Plaintiff, most of

the blows struck him in the head. (*Id*.).  During the alleged assault, Defendant Morton

was standing both inside and out of Plaintiff's cell, and did not intervene.

Defendants offer a much different version of events, and maintain that Plaintiff

struck Banks in the eye with his elbow while Westervelt was applying the leg restraints.

Plaintiff, however, maintains that it was actually Westervelt who struck Banks in the eye,

in order to make it appear that Plaintiff had assaulted Banks.  Defendants further

maintain that after Plaintiff elbowed Banks, Westervelt and Banks used reasonable force

to take Plaintiff down to the ground, where they finished applying the shackles to

Plaintiff's right leg.  Both Banks and Westervelt deny punching or kicking Plaintiff.

Following the incident, Plaintiff was issued a Misbehavior Report, and was

subsequently found guilty at a Tier III Disciplinary Hearing.  As a result, he was

sentenced to eighteen additional months in SHU, twelve months loss of good time, and

seven days restricted diet.  Plaintiff appealed, however, McGinnis affirmed the

conviction.

On December 2, 2004, Plaintiff commenced the subject action.  Following

discovery, Defendants filed the subject motion for summary judgment on February 24,

2006.  Defendants contend that McGinnis is entitled to summary judgment because he

was not personally involved in the alleged assault.  Defendants further contend that

Morton, Banks, and Westervelt are entitled to summary judgment, even though there

appears to be disputed issues of fact concerning the assault, because Plaintiff's version

of events is "incredible as a matter of law."  In support of the motion, Defendants offer a

photograph of Banks, allegedly taken immediately after the incident, which shows that

his eye is swollen, as well as photographs of Plaintiff taken immediately after the

incident, which show no serious injuries, and only minor abrasions.  Defendants have

also submitted a videotape of the incident, which they maintain shows Plaintiff striking

Banks.  Defendants have also submitted affidavits from Banks, Westervelt, and the

nurse who examined Plaintiff following the alleged assault, but have not submitted

affidavits from Morton or McGinnis.

After Defendants filed their motion, Plaintiff filed a number of motions, including

multiple motions for assignment of counsel, and multiple motions for injunctive relief.

After these motions were resolved, Plaintiff filed his opposition to the summary judgment

motion on February 12, 2008.  In that regard, Plaintiff maintains that McGinnis was

personally involved in the alleged assault on December 4, 2001, because he knew that

Banks had previously violated Plaintiff's constitutional rights, and because he  failed to

take any corrective action:

> McGinnis knew that the defendant Banks had been engaging in a pattern
> of unlawful retaliation and assaults against [Plaintiff] and had a pattern of
> abusing and assaulting prisoners, new that [by] continuing to allow

5

defendant Banks to work around [Plaintiff], further retaliatory assaults would recur/occur, knew that defendant Banks was a temperamental 'hot-head' and walking time bomb and failed to protect [Plaintiff] and personally encouraged the . . . assaults upon [Plaintiff's] person . . . . [McGinnis] failed to take any reasonable measures to prevent the [December 4, 2001] assault by Banks . . . .  [McGinnis] creat[ed] and maintain[ed] a policy or custom of allowing unlawful retaliatory practices that included assaults upon [Plaintiff] . . . and also acted with 'gross negligence' in managing his subordinates . . . .

(Plaintiff's Affidavit in Opposition to Summary Judgment [#55] ¶ 103).  Additionally, Plaintiff denies that he struck Banks, and maintains that he was viciously assaulted without provocation.

## DISCUSSION

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must

present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at

249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made

and supported as provided in this rule, and adverse party may not rest upon the mere

allegations or denials of the adverse party's pleading, but the adverse party's response,

by affidavits or as otherwise provided in this rule, must set forth specific facts showing

that there is a genuine issue for trial.").  Summary judgment is appropriate only where,

"after drawing all reasonable inferences in favor of the party against whom summary

judgment is sought, no reasonable trier of fact could find in favor of the non-moving

party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).  The parties may only carry

their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV.

P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and

depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v.*

*Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Moreover, since Plaintiff is proceeding *pro se*,

the Court is required to construe his submissions liberally, "to raise the strongest

arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).[3]

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles for such a

claim are clear:

> In order to establish individual liability under § 1983, a plaintiff must show
> (a) that the defendant is a "person" acting "under the color of state law,"
> and (b) that the defendant caused the plaintiff to be deprived of a federal
> right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492

---

[3]Defendants provided the *pro se* Plaintiff with the *Irby* notice required by Local Rule 56.2.

(1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).

\*\*\*

An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Where a plaintiff alleges that the defendants violated his rights under the Eighth Amendment to be free from excessive force, the applicable legal principles are similarly well-settled:

The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  The absence of serious injury is  relevant to the Eighth Amendment inquiry, but does not end it.

To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (citations and internal quotation marks omitted).

Applying these principles of law, the Court finds, at the outset, that summary judgment cannot be granted to Banks, Westervelt, or Morton on the present record, since there are triable issues of material fact.  Although Defendants contend that Plaintiff's version of events is incredible as a matter of law, the Court disagrees.

Turning to McGinnis's application for summary judgment, the Court likewise concludes that his motion must be denied, since there are triable issues of fact concerning his personal involvement in the alleged constitutional violation.  In that regard, Defendants' counsel argues that McGinnis is not personally involved because he was not present during the alleged assault. (Defendants' Memo of Law [#30] at 3) (citing Plaintiff's Deposition Transcript at 25, where Plaintiff testified that McGinnis was not present during the assault.).  However, Plaintiff maintains that McGinnis is personally involved because he ignored Plaintiff's complaints regarding Banks.  On that point, courts in this Circuit generally hold that a supervisory official does not become personally involved merely by receiving correspondence from an inmate. *See, e.g., Petty v. Goord*, No. 00 Civ.803 (MBM), 2002 WL 31458240 at *8 (S.D.N.Y. Nov.4, 2002) (Mukasey, J.) ("[C]ourts in this Circuit, applying the principles laid out in *Colon*, have agreed that receiving a letter from an inmate does not constitute sufficient personal involvement to generate supervisory liability.").  However, many courts have found that a supervisory official may be personally involved in an alleged constitutional violation where he personally denies an inmate's grievance concerning the alleged violation. *See, e.g.*, *McPherson v. Coombe*, 29 F.Supp.2d 141, 145 (W.D.N.Y. 1998) ("Defendant [Superintendent] Johnson's denial of plaintiff's [grievance] request  suggests that she was personally involved in decisions leading to this cause of action. "); *Walker v. Pataro*,

9

No. 99CIV.4607(GBD)(AJP), 2002 WL 664040 at *13 (S.D.N.Y. Apr. 23, 2002) ("[W]here

a supervisory official receives and acts on a prisoner's grievance (or substantively

reviews and responds to some other form of inmate complaint), personal involvement

will be found under the second *Colon* prong: "the defendant, after being informed of the

violation through a report or appeal, failed to remedy the wrong.").  In the instant case,

viewing the evidence in the light most favorable to Plaintiff, it appears that prior to the

alleged assault on December 4, 2001, McGinnis received and denied at least one, and

possibly more, grievances from Plaintiff concerning alleged assaults by Banks.

Consequently, the Court finds that there are triable issues of fact concerning McGinnis's

personal involvement.

CONCLUSION

For the foregoing reasons, Defendants' motion [#24] for summary judgment is

denied.  By separate Pretrial Order, the Court will schedule this matter for trial.

So Ordered.

Dated: Rochester, New York
    March 31, 2008        ENTER:


                /s/ Charles J. Siragusa
                CHARLES J. SIRAGUSA
                United States District Judge